Samuel Rosenback v. The Manufacturers' and Build-
ers' Bank.

In the matter of the Petition of the German Uptown
Savings Bank, in the city of New York, Appellant,
v. The Receiver of the Manufacturers' and Build-
ers' Bank, Respondent.

The provision of the act of 1875, in relation to savings banks (§ 48, chap.
371, Laws of 1875), providing that savings banks shall have a prefer-
ence for moneys deposited over other creditors of an insolvent bank,
only applies to deposits made in the ordinary course of business, and
subject to the drafts of the depositors, to an amount not exceeding that
authorized by § 27 of said act. Loans, whether on time or payable on
call, are not deposits within the meaning of said provision.

A loan cannot be changed into a deposit by reason of any want of author-
ity in the managers of the savings bank to make the loan, or for the
reason that it may have been made in violation of law.

A savings bank had $50,000 on deposit with defendant, the latter applied
to the savings bank for a loan on call of $40,000, the loan was agreed
upon, a formal agreement prepared, and defendant gave securities for
repayment of the loan. The president of the savings bank borrowed
$65,000 on its own securities and deposited $40,000 to defendant's credit in
the C. bank, which was defendant's correspondent, and where its account
was overdrawn. The amount bore interest from the time of this deposit,
it was entered in the cash book of the savings bank as a " deposit," but
was thereafter entered in the journal as a call loan, and $5,000 paid on
the day of such entry was entered as made on account of the loan ; in
defendant's books it was entered to the credit of the call loan account
of the savings bank. *Held,* that the transaction was a loan, not a
deposit, and that the savings bank was not entitled to a preference.

(Argued April 10, 1877; decided April 17, 1877.)

Appeal from order of the General Term of the Supreme
Court, in the first judicial department, affirming an order of
Special Term, which denied a motion on the part of Herman
Uhl, receiver, etc., to be paid by the receiver of the defend-
ant the amount of an alleged deposit. (Reported below, 10
Hun, 148.)

Hermann Uhl, as Receiver of the German Up-town Savings
Bank, applied by petition to the court below, for an order
directing William A. Butler, Receiver of defendant, the Manu-

facturers' and Builders' Bank, to pay him $28,887.42, the balance of an alleged deposit made by the Savings Bank to the Manufacturers' and Builders' Bank.    This application was made under Section 48 of Chapter 371 of the Laws of 1875.

That section provides that " all the assets of any bank or banking association, now or hereafter organized, that shall become insolvent, shall, after providing for the payment of its circulating notes, if it shall have any, be applied by the disectors, assignee or receiver thereof, in the first place, to the payment in full of any sum or sums of money deposited therewith by any savings corporation."

The Receiver of the Manufacturers' and Builders' Bank, in answer to the petition, alleged in substance that all deposits made in such bank by the German Up-town Savings Bank had been paid in full by him out of the assets that came into his hands; and that the amount mentioned in the petition was not a deposit, but was the balance of a call loan of $40,000 made by the Savings Bank to the Manufacturers' and Builders' Bank, for which collaterals were deposited with the Savings Bank.

The facts appearing upon the application as to the character of the indebtedness are sufficiently stated in the opinion.

*Jno. E. Parsons*, for the appellant.

*Osborn E. Bright*, for the respondent.

Allen, J.    The statute under which the receiver of the savings bank claims a preference over the other creditors of the Manufacturers' and Traders' Bank, does not undertake to secure the debts of every character which may be due from a bank or banking association to a savings institution in preference to debts due individuals or other corporations, but only such as are due for money deposited in the usual course of business and subject to the drafts of the depositor to an amount not exceeding that authorized to be deposited by section twenty-seven of the act.    (Laws of 1875, chap. 371, § 48.)

Loans, whether on time or payable on call, are not deposits within the act entitled to a preference. If the money sought to be recovered by this proceeding was a loan, it cannot be changed into a deposit by reason of any want of authority in the managers of the savings bank to make the loan, or for the reason that it may have been made in violation of law. The court cannot make a contract which the two corporations did not make or intend to make which would essentially vary their rights and obligations, and seriously affect third persons, whose interests would be prejudiced by changing the relation of the banks and the character of the obligation of the debtor bank. Officers of savings banks may not always be mindful of the general laws of the State or the by-laws of the corporation; but if they violate either, or are guilty of a breach of trust, the remedy is against them, and not by the substitution of a contract which would have been legal if made, for an illegal contract actually made. Other creditors of the insolvent bank have rights which forbid it.

Was then the $40,000, the subject of the present controversy, a deposit in the ordinary course of business to the general account of the savings bank as authorized by law, or was it a " call loan," secured by collaterals and to be repaid with interest at seven per cent. on call or demand? On the morning of the 16th of September, 1875, the savings bank had on deposit with the banking corporation a balance of nearly $50,000; the bank was overdrawn at the Chatham Bank, its correspondent in the lower part of the city, was in urgent want of $40,000, to prevent immediate insolvency, and applied to the savings bank for a loan on call of that amount upon securities for its repayment, and for the payment of the general deposit account. The loan was agreed upon, a formal agreement was prepared, and securities delivered. The president of the savings bank, upon its own securities, borrowed $65,000, $40,000 of which was deposited in the Chatham Bank to the credit of the Manufacturers' and Traders' Bank, and thus made the loan which it had agreed

to make, and the transaction had none of the features of a
deposit by the savings bank. The books of the two institu-
tions, as might be expected, were not kept in a way very
distinctly to show the dealings between them, but it does
appear very satisfactorily that this $40,000 was loaned in
the way stated, on, and bore interest from the 16th of Sep-
tember. The loan was consummated on that day. It
appears in the cash book of the savings bank on that day as
———— a " deposit." It was not entered in the journal until
October 4, and then it was entered as a call loan from the
16th day of September, and $5,000, paid that day, is entered
as paid on account of the loan. In all the entries so far as
appears after the first brief entry in the cash book, it was
designated as " the call loan," or " call loan of September
16th." The officers of the savings bank were, on the 16th
of September, unwilling to increase their deposits, and for
the very good reason that the banking corporation was on
the eve of failure, in great trouble and bad credit, and the
application and negotiation were for a loan on security. In
the books of the debtor corporation the amount was placed
to the credit of the call loan account of the savings bank.
The savings bank had no money to deposit on the 16th of
September, and borrowed this sum to enable the banking
corporation to pass safely through the clearing house for that
day, and this tends to confirm the statement of the cashier
of the banking corporation that it was a call loan, and to
confirm the entries in the books of the savings bank. Why
the check was drawn on the fourth of October, and the
two entries made in the cash book of the savings bank bal-
ancing each other, does not appear. It is very evident there
was no negotiation for a loan, nor any real transaction, either
deposit or loan of money on that day. The actual transac-
tion, the loan of the money to the bank, was on the sixteenth
of September, and the subsequent entries in the book by
which the balances were not changed, and the formal draw-
ing of a check without purpose or results, do not affect the
substance of the transaction. The statement of Mr. Morgan,

in his affidavit, made to oppose the application, is corrected and explained in his evidence before the referee, and by all the circumstances and evidence in the case.

The Supreme Court rightly determined the fact that the $40,000 was advanced as a loan on the sixteenth day of September, and was not, at any time, deposited to the general account of the savings institution, and the order must be affirmed.

All concur.

Order affirmed.